UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**KYLE BODIN**                          CASE NO.  6:22-CV-01863

**VERSUS**                              JUDGE JAMES D. CAIN, JR.

**MORTON SALT INC ET AL**               MAGISTRATE JUDGE PATRICK J. HANNA

## MEMORANDUM RULING

Before the court are Motions to Dismiss filed under Federal Rule of Civil Procedure 12(b)(6) by, respectively, defendants International Chemical Workers Union Council/UFCW, Local 29C ("Union" or "ICWUC") and Morton Salt, Inc. ("Morton"). Docs. 15, 16. Plaintiff Kyle Bodin opposes both motions. Docs. 18, 19.

### I.
### BACKGROUND

This suit arises from plaintiff's employment with Morton, which is governed by the terms of a collective bargaining agreement ("CBA") between Morton and ICWUC. Doc. 1, att. 1, ¶ 41. Specifically, Bodin alleges that he was employed as an electrician apprentice at the Morton Salt Weeks Island facility in Iberia Parish, Louisiana, when he was terminated after an on August 9, 2021, for violating lock-out/tag-out procedures while performing repairs on July 29, 2021. *Id.* at ¶¶ 4–27. He maintains, however, that he was not in violation because he was merely inspecting rather than making repairs on the date in question. *Id.* at ¶¶ 28–29. Instead, he asserts, his termination was in retaliation for making

a safety complaint. *Id.* at ¶ 31. He also alleges that he instructed his ICWUC representative to file a grievance so that Morton's employment decision could be reviewed, but that the representative mishandled his claim and that his termination was confirmed as a result. *Id.* at ¶¶ 34–40.

Bodin then filed suit in the Sixteenth Judicial District Court, Iberia Parish, Louisiana, against Morton, ICWUC, and two fictitious insurance companies, raising claims of wrongful termination, negligence, and breach of the CBA. *Id.* at pp. 2–9. Morton removed the suit to this court on the basis of federal question jurisdiction, 28 U.S.C. § 1331, with consent of ICWUC. Doc. 1. Both defendants have now filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). ICWUC asserts (1) that Bodin's state law claims are preempted by the § 301 of the Labor-Management Relations Act ("LMRA") and must be dismissed as such; (2) alternatively, if the court recharacterizes the claims as hybrid, there is no basis for stating a claim against the union for lack of fair representation; (3) the petition is untimely; and (4) the petition should be dismissed as to all parties because plaintiff is required to establish both a breach of the CBA by Morton and a breach of the Union's duty of fair representation to succeed on a § 301 claim. Doc. 15, att. 1. Meanwhile, Morton likewise asserts that (1) state law claims are preempted by the LMRA; (2) any claim under § 301 of the LMRA is time-barred; and (3) even if Bodin states a claim for retaliation that is not preempted, he fails to properly bring a claim under the Louisiana Whistleblower Act ("LWA"). Doc. 16, att. 1. Bodin opposes both motions but concedes that he did not bring a claim under the LWA. Docs. 19, 20.

## II.
## LAW & APPLICATION

### A. Motion to Dismiss Under 12(b)(6)

Rule 12(b)(6) allows for dismissal when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court can also consider documents referenced in and central to a party's claims, as well as matters of which it may take judicial notice. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir. 2008) (unpublished).

Such motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the court's task is not to evaluate the plaintiff's likelihood of success but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### B. Application

#### 1. Preemption of state law claims

Section 301 of LMRA vests federal courts with jurisdiction to hear claims for violation of labor contracts. 29 U.S.C. § 185(a). "Incompatible doctrines of state law must

give way to federal labor law." *Thomas v. LTV Corp.*, 39 F.3d 611, 616 (5th Cir. 1994) (citing *Local 174, Teamsters v. Lucas Flour CO.*, 369 U.S. 95, 102–03 (1962)). Accordingly, "Section 301 not only gives federal courts jurisdiction to hear employment cases covered by collective bargaining agreements, but also directs them to fashion a body of federal common law to resolve such disputes, and preempts any state law claims which require the interpretation of a collective bargaining agreement." *Baker v. Farmers Elec. Co-op., Inc.*, 34 F.3d 274, 279 (5th Cir. 1994) (internal quotation omitted). The purpose behind this preemption "is to ensure that issues raised in actions covered by section 301 are decided in accordance with the precepts of federal labor policy." *Id.* The preemption extends to all cases where resolution of the state law claims "depends upon the meaning of a collective bargaining agreement," but stops short of claims only tangentially involving provisions of a CBA. *Thomas*, 39 F.3d at 617.

  Defendants assert that Bodin's claims for negligence, wrongful termination, and breach of contract are all preempted by the LMRA and instead must be either dismissed or construed as a "hybrid action" under § 301 of the LMRA. A "hybrid action" is one in which a union member sues his employer for breach of its contractual obligations under a collective bargaining agreement and the union for breach of its duty of fair representation. *Carrington v. United States*, 42 F.Supp.3d 156, 161 (D.D.C. 2014). Procedurally, the employee must prevail on the representation claim before he can even litigate the merits of his § 301 claim against the employer. *Id.* (citing *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 67 (1981)). Additionally, hybrid claims under § 301 are subject to a six-month statute of limitations. *Thomas*, 39 F.3d at 621–22 (citing 29 U.S.C. § 160(b)). The

classification of these claims will therefore have implications for their timeliness, as discussed *infra*.

Bodin maintains that his claims are not intertwined with the terms of the CBA and instead only involve the application of the agreement's "simple and uncontested" terms to the facts alleged. Doc. 18, att. 1, p. 9. The preemption analysis also demands, however, that the court "determine whether the claims require an inquiry into the facts and motivations of the parties relative to rights conferred by state law or rights conferred by the CBA." *Manos v. United Food and Commercial Workers Intern. Union*, 9 F.Supp.3d 473, 481 (D.N.J. 2014). Bodin's breach of fair representation claim relies on the duties of the union under the CBA. *See, e.g.*, doc. 1, att. 1, ¶ 33 ("Petitioner avers that as part of the [CBA] there is a grievance process by which employment decisions and sanctions are to be reviewed.") The claims for breach of contract and negligence against the union are thus substantially intertwined with the CBA and preempted by federal law. As to his termination, Bodin also asserts that "due to the collective bargaining agreement, he is not an 'at-will' employee and [is] covered by procedures and agreements assigned therein under his employment contract." *Id.* at ¶ 42. Bodin has made clear that he is not bringing a whistleblower claim, and so his wrongful termination claim instead rests on any employment agreements incorporated through the CBA as well as his position that he is not an at-will employee by virtue of the CBA. *Cf. Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985) (a claim seeking to vindicate "nonnegotiable state law rights . . . independent of any right established by contract" is not preempted by the LMRA). This claim is therefore likewise preempted.

When the court determines that a state law claim is subject to preemption and arises under federal law, it may either recharacterize the claim as a federal one or dismiss it as preempted. *Manos*, 9 F.Supp.2d at 480 (collecting cases). Here the suit is in its infancy and the allegations are broad enough to be recharacterized as a hybrid claim under the LMRA, as described above. Accordingly, the court will recharacterize the claims as a hybrid one under § 301 of the LMRA and apply the defendants' remaining arguments for dismissal under Rule 12(b)(6).

## 2. Timeliness

As mentioned above, hybrid claims under § 301 are subject to a six-month statute of limitations. This limitations period is drawn from § 10(b) of the National Labor Relations Act, which sets a six-month period for bringing charges of unfair labor practices to the National Labor Relations Board. 29 U.S.C. § 160(b); *see Smith v. Intern. Org. of Masters, Mates and Pilots*, 296 F.3d 380, 382 (5th Cir. 2002) (citing *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 155 (1983)). The statute of limitations begins to run when the plaintiff either knew or should have known of the injury itself rather than of its manifestations. *Barrett v. Ebasco Constructors, Inc.*, 868 F.2d 170, 171 (5th Cir. 1989).

Bodin filed suit in the state court on May 16, 2022. Doc. 1, att. 1. He complains of both his termination by Morton on August 9, 2021, as well as the union's ensuing failure to file a grievance. He further alleges that he called the union multiple times after his termination to check on the status of his grievance, but did not learn that it had not been filed until "later in December 2021," when another Morton employee informed him that he had found the grievance paperwork in a changing room at work and turned it into the

main office. *Id.* at ¶¶ 37–38. Defendants maintain, however, that under the grievance procedures set forth in both the CBA and the Morton Salt Weeks Island Safety Handbook [doc. 15, atts. 2 & 3], it should have been apparent to Bodin by an earlier date if no grievance had been filed. They also attach records to show that a grievance was filed by the union on Bodin's behalf, and denied in writing and on the merits by Morton on September 3, 2021. Doc. 15, att. 7. Bodin maintains that, notwithstanding this record, the union still failed to comply with its duty of fair representation by (1) filing the matter untimely in the first place and (2) failing to either endorse the response if it found it acceptable or request a meeting if the response was unacceptable. Doc. 18, att. 1, p. 8.

The grievance record itself is outside the scope of review on a 12(b)(6) motion. To consider it, the court must convert the motion to dismiss to a motion for summary judgment. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). However, the court has complete discretion to determine whether to accept material outside the pleadings and convert the motion. *Ware v. Assoc. Milk Prods.*, 614 F.2d 413, 415 (5th Cir. 1980). Because summary judgment usually occurs during or after the discovery period, conversion of a motion to dismiss prior to the commencement of discovery is unlikely to afford the parties a "full, fair, and wholly adequate opportunity for discovery" as required under Rule 56. *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725–26 (5th Cir. 2003).

Given that this matter is still in its infancy and that no discovery has yet taken place, the court declines to convert the motion to dismiss into one for summary judgment in order to consider the grievance record. The CBA, however, is both referenced in and central to

Bodin's complaint. Accordingly, the court will review the terms of the document to determine whether Bodin could have reasonably waited until December 2021 to discover that no grievance had been filed.

With respect to grievances, the CBA provides that the matter must be reduced to writing and presented to the plant manager within ten working days. Doc. 15, att. 2, p. 8. The plant manager is given five working days to answer, and the chief steward and shop committee shall then either endorse the grievance or request a meeting with the plant manager within three working days of receiving the response. *Id.* If a meeting is requested it must be scheduled within five working days of such a request but if no such request is made then the matter is considered settled. *Id.*

Bodin has alleged that he contacted the union "multiple times" between his termination and December 2021 "to check on the status of the grievance process," but that "on each and every occasion . . . they failed and/or refused to provide any pertinent information in regards to the processing of the grievance claim." Doc. 1, att. 1, ¶ 37. As yet there is no information as to whom Bodin called, what exactly he was told, or when he made these calls. Without additional discovery, the court cannot determine when Bodin reasonably should have known of any breach of duty of fair representation by the union. Accordingly, the court cannot dismiss this matter as time-barred.

### 3. Fair representation

Finally, the defendants argue that plaintiff (1) fails to state a claim on which relief can be granted as to the fair representation claim and (2) thereby fails to state a claim against Morton as well, since he must prevail on the fair representation claim against the

union before he can proceed against his employer. *E.g., Carrington*, 42 F.Supp.3d at 161. In order to prevail on a fair representation claim, the employee must show that the union's conduct "was arbitrary, discriminatory, or in bad faith, so that it undermined the fairness or integrity of the grievance process." *Landry v. The Cooper/T. Smith Stevedoring Co.*, 880 F.2d 846, 852 (5th Cir. 1989). "Under this test, a union may not arbitrarily ignore a meritorious grievance or process it in [a] perfunctory fashion." *Id.* (internal quotations omitted). Instead, the union's duty is to investigate a grievance and prosecute it with reasonable diligence unless it decides in good faith that the matter lacks merit or for some other reason should not be prosecuted. *Id.*

      Here defendants first argue that the union's decision not to pursue the grievance any further was well-supported. Again, however, they rely on the grievance record, which is outside of the scope of the court's review here. Defendants also allege that Bodin has failed to allege sufficient facts to show that the union acted in an arbitrary and capricious manner. Bodin has asserted, however, that the union failed to adequately investigate his claim and represent him in his grievance. He has also alleged that he was wrongfully terminated under the terms of the CBA based on failure to comply with safety procedures that did not apply to his work on the date in question. These allegations are adequate, at the pleading stage, to state a claim for relief. The court cannot resolve the matter further without turning to summary judgment-type evidence, and has already found that it is premature to do so. Accordingly, the motions will likewise be denied in this regard.

## III.
### CONCLUSION

For the reasons stated above, the Motions to Dismiss [docs. 15, 16] filed by International Chemical Workers Union Council/UFCW, Local 29C and Morton Salt, Inc. will be **DENIED.**

**THUS DONE AND SIGNED** in Chambers on the 29th day of August, 2022.

JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE